UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAULA L. YOUNG                                                                PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:17-CV-395 DW

NANCY A. BERRYHILL,
Acting Commissioner of Social Security                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Paula Young has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied her application for disability insurance benefits (DIB).  Young applied for DIB on April 14, 2014, alleging that she was disabled as of May 15, 2012, due to torticollis, dystonia, cervical degenerative disc disease, complex regional pain syndrome, left breast carcinoma status-post bilateral breast surgeries, depression, anxiety, and obsessive-compulsive disorder (Tr.21).  The Commissioner denied Young's claims on initial consideration (Tr. 88-101) and on reconsideration (Tr. 102-117).  Young requested a hearing before an Administrative Law Judge (ALJ) (Tr.132).

ALJ William C. Zuber conducted a hearing in Louisville, Kentucky, on Jan. 4, 2016 (Tr.36-87).  Young attended with her attorney, Kevin McDowell (Tr. 36 ).  Young and vocational expert (VE) Tina Stanbaugh testified at the hearing (Tr.39-76, 77-87).  Following the

conclusion of the hearing, ALJ Zuber entered a hearing decision on May 25, 2016 that found Young is not disabled for the purposes of the Social Security Act (Tr.19-30).

In his adverse decision, ALJ Zuber made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.  The claimant has not engaged in substantial gainful activity since May 15, 2012, the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3.  The claimant has the following severe impairments: torticollis, dystonia, cervical degenerative disc disease, complex regional pain syndrome, left breast carcinoma status-post bilateral breast surgeries, depression, anxiety, and obsessive-compulsive disorder (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she needs the option to sit and stand every 30-45 minutes. She could occasionally climb ramps and stairs, stoop, and crouch. She could never crawl, kneel, or climb ladders, ropes, and scaffolds. She could not reach overhead. She could not be exposed to vibration, dangerous machinery, or unprotected heights. She could only perform simple, routine, 1-2 step tasks that are not fast-paced or quota driven. She could have frequent contact with coworkers, supervisors, and the general public. She could only adapt to changes in work routine or environment that are rare and gradually introduced. She could sustain concentration, persistence, and pace for two-hour periods.

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.  The claimant was born on August 19, 1966, and was 45-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.  The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2012, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr.21-30). Young sought review of the hearing decision by the Appeals Council (Tr. 177). The Appeals Council denied her request for review, finding no reason under the Rules to review ALJ Zuber's decision (Tr.1-8). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505(a)(4), 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). *Miller v. Commissioner*, 811 F.3d 825, 834 n. 6 (6th Cir. 2016)(" The ALJ must engage in a five-step sequential evaluation process to determine whether a claimant is disabled."). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Gayheart v. Commissioner,* 710 F.3d 365, 374-75 (6th Cir. 2013)( "If claimant is doing substantial gainful activity, he is not disabled."); *Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *Gayheart,* 710 F.3d at 374("If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled."). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Rabbers v. Commissioner,* 582 F.3d 647, 652 (6th Cir. 2009); *Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Gray v. Astrue,* 780 F. Supp.2d. 548, 550 (E.D. Ky. 2011)(" If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments—i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.")

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart P of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii); *Rabbers*, 582 F.3d at 652. The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Combs v. Commissioner*, 459 F.3d 640, 642 (6th Cir. 2006)("Claimants are conclusively presumed to be disabled if they suffer from an infirmity

that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed."); *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991)(same).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Wilson v. Commissioner,* 378 F.3d 541, 458 (6th Cir. 2004); *Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3). *Mackins v. Astrue*, 655 F. Supp.2d 770, 776 (W.D. Ky. 2009)(" The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.").

The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Cruse v. Commissioner*, 502 F.3d 532, 539 (6th Cir. 2007); *Wilson v. Commissioner*, 378 F.3d 541, 458 (6th Cir. 2004)(" If the claimant does . . . [satisfy the initial 4-steps], including establishing that under the claimant's "residual functional capacity the claimant can [not] perform his past relevant work," the burden then shifts to the Commissioner [at step 5] to show that "based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not

disabled.") . Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011)("[R]eview is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.); *Dennis v. Astrue*, 655 F. Supp.2d 746, 749-50 (W.D. Ky. 2009)(same).

Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Lindsley v. Comm'r of Soc. Sec*., 560 F.3d 601, 604 (6th Cir.2009); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)(same). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir.2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

Plaintiff, Paula L. Young, was 49-years old at the time of the adverse hearing decision, with a high school education and a prior 10-year work history as a part-time administrative assistant, which ended in 2012 when the law firm that employed her as a legal secretary could no longer afford her services. (Tr. 448). Young challenges only one aspect of ALJ Zuber's adverse decision. Her focus is the residual functional capacity (RFC) finding of the ALJ at pages 5-10 of his decision (Tr. 23-28).

In that finding, the ALJ determined that Young remains capable, despite the limitations caused by her severe impairments, of performing light work with a sit-stand option limited to routine 1-2 step tasks that are not quota driven, where changes in her work routine are rare and are gradually introduced. He further determined in the same finding that Young would be

precluded from overhead reaching, crawling, kneeling, climbing ladders, ropes or scaffolds and that she cannot reach overhead. (Tr. 23). Finally, ALJ Zuber in finding no. 5 limited Young to sustaining concentration, persistence and pace for two-hour intervals and to only frequent contact with coworkers, supervisors and the general public. (Id.).

Young now maintains that this RFC finding is the result of an error of fact and law related to her testimony at the administrative hearing. The testimony at issue involves her decision to decline spinal surgery. At pages 22-23 of the hearing transcript (Tr. 57-58), Young and the ALJ discuss the decision of Young to forego the implantation of a cervical spinal cord stimulator suggested by Dr. Cassaro. (Tr. 803).Young declined the device due to the invasive nature of the procedure. (Id.) ALJ Zuber assured Young at that point of the hearing that her election to forego the spinal surgery will not be held against her by the SSA. (Tr. 58-59). In his words, "we don't sit there and say, well, you're not really bad off because otherwise you would've asked them to stick this thing [the stimulator] in your neck with a remote." (Tr. 59).

Young now argues that despite this explicit assurance, ALJ in his hearing decision at page 8 did just that—hold her election to decline spinal surgery against her in rejecting the credibility of her subjective complaints of disabling pain due to her torticollis,[1] dystonia,[2]

---

[1] "Torticollis is a problem involving the muscles of the neck that causes the head to tilt down. The term comes from two Latin words: tortus, which means twisted, and collum, which means neck. Sometimes it's called "wryneck." https://webmd.com/parenting/baby/what-is-torticollis (last visited April 16, 2018). Another name for spasmodic torticollis is "cervical dystonia, which "is a painful condition in which your neck muscles contract involuntarily, causing your head to twist or turn to one side. Cervical dystonia can also cause your head to uncontrollably tilt forward or backward. A rare disorder that can occur at any age, cervical dystonia most often occurs in middle-aged people, women more than men. Symptoms generally begin gradually and then reach a point where they don't get substantially worse." https://www.mayoclinic.org/diseases-conditions/cervical-dystonia/symptoms-causes/syc-20354123 (last visited April 16, 2018).
[2] Dystonia is a movement disorder in which your muscles contract involuntarily, causing repetitive or twisting movements. The condition can affect one part of your body (focal dystonia), two or more adjacent parts (segmental dystonia) or all parts of your body (general dystonia). The muscle spasms can be mild or severe, and might interfere with your performance of day-to-day tasks. https://www.mayoclinic.org/diseases-conditions/dystonia/symptoms-causes/syc-20350480 (last visited April 16, 2018).

cervical degenerative disc disease, and post-mastectomy chest pain. Specifically, the hearing decision provides at page 8 in discussing the factors to be considered under SSR 16-3p that:

> Additionally, the claimant notes improvement in these symptoms [involuntary movements, tremors, muscle spasms, neck pain, headaches, and breast pain] with this medication. There has been no significant adjustment in the claimant's mediation over time. Besides, medication, the claimant has also been treated with an epidural injection, which did not help. However, the claimant has not required even more aggressive treatment modalities, such as surgery. She refused a spinal cord stimulator because she did not want to have an invasive procedure.

(Tr. 26).

Young maintains that the quoted language above is contrary to both the Social Security Ruling and the case law which interprets it. According to Young, the decision of a claimant to reject medically recommended back surgery may only be a basis on which to deny a claim for benefits if the surgical procedure would have restored the claimant's ability to perform substantial gainful activity. *See Dooley v. Astrue*, No. 1:10CV544, 2011 WL 4384180 at *7-8 (N.D. Ohio Sept. 2011)(plaintiff correctly argued that ALJ's reliance on her refusal to have back surgery was misplaced)(citing *Harris v. Heckler*, 756 F.2d 431, 435-36 (6th Cir. 1985) and *Fraley v. Sec'y of HHS*, 733 F.2d 437, 440 (6th Cir. 1984). *See, Shauf v. Sec'y of HHS*, 770 F.2d 167 (6th Cir. 1985(table)(available at 1985 WL 13517)(" 20 C.F.R. § 404.1530(a) provides that '[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.' Subsection (b) provides in pertinent part that '[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled. . . .' In order to deny benefits on this ground, the evidence must show that (1) the surgery would restore claimant's ability to work, (2) the surgery was prescribed, (3) claimant refused the surgery, (4) such refusal was willful.").

The United States addresses this argument at pages 6-7 of its Fact & Law summary (DN 17). The Government insists that the ALJ "did not draw any negative inference from Plaintiff's refusal to have surgery. Rather, the ALJ properly summarized the treatment record and Plaintiff's testimony, noting that Plaintiff had not required any surgery and that Plaintiff did not seek surgery because of her concerns, both of which are accurate statements." (TR 26) Consequently, the United States concludes that ALJ Zuber properly and thoroughly stated Young's treatment record to conclude that it, along with her daily activities and statements, were inconsistent with the subjective complaints of disabling pain and limitations that she alleged. The Court upon comprehensive review of the record, and analysis of the arguments of the parties, is compelled to agree with the United States.

**Legal Analysis**

The argument of the Plaintiff focuses exclusively on that part of the hearing decision in which ALJ Zuber evaluates Young's symptoms pursuant to Social Security Ruling (SSR) 16-3p, 2016 WL 1119029 (eff. Mar.28, 2016).[3] SSR 16-3p clarifies the language of the pre-existing standard set forth in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given

---

[3] The Social Security Administration on March 24, 2016 issued a notice of correction that changed the original effective date of SSR 16-3p from March 16, 2016 to March 28, 2016. SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). *See Brothers v. Berryhill,* 2017 WL 2912535 at*10 n. 4 (N.D. Ohio June 22, 2017). Therefore, SSR 16-3p took effect approximately two months prior to the hearing decision rendered by the ALJ on May 25, 2016 (TR 19-30).

the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. . . .'" *Huigens v. Social Security Administration*, No. 17-11682, 2017 WL 6311683 at *6 (11th Cir. Dec. 11, 2017)(quoting, *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)).

The analysis under SSR 16-3p otherwise is identical to that performed under SSRI 96-7p. First, the Commissioner will consider all of the claimant's symptoms to include her pain, and the extent to which these symptoms reasonably can be expected to be consistent with the objective medical evidence of record. SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016). In doing so, the Commissioner initially looks to the underlying medically determined impairments that reasonably could be expected to produce the claimant's symptoms. Once the Commissioner establishes the existence of such underlying physical or mental impairments that reasonably could produce the alleged symptoms of the claimant, then the Commissioner in the second step of the process will evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the ability of the individual to perform work-related activities. *Id.*

To evaluate the intensity and persistence of a claimant's subjective symptoms such as pain, the Commissioner will consider a number of factors to include: (1) the severity of the objective medical evidence of record; (2) the statements of the claimant about the intensity, persistence and limiting effects of her symptoms; (3) clinical findings and observations about such symptoms; (4) statements from other sources that have information about the claimant's symptoms; (5) the daily activities of the claimant; (6) any factors that precipitate or aggravate the symptoms; (7) the type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms; (8) treatment, other than medication, for relief of pain or other

symptoms; and (9) any other factors about the claimant's functional limitations and restrictions due to pain or symptoms. SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016). *See, Pariscoff v. Commissioner*, No 2:17-CV-798, 2018 WL 1224515 at*5 (S.D. Ohio Mar. 9, 2018)(discussing the analysis to be performed under SSR 16-3p); *Brothers v. Berryhill*, 3:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017)(discussing the analysis under the preceding SSR 96-7p); *Patterson v Colvin*, No. 13-CV-1040, 2016 WL 7670058 at * 8-9 (W.D. Tenn. Dec. 16, 2016).

Here, there is no indication that ALJ Zuber inappropriately departed from the analysis required by SSR 16-3p. Review of the hearing decision shows that the ALJ at pages 7-8 of his decision carefully reviewed Young's medical treatment history including the results of her various examinations by treating medical sources, diagnostic imaging reports, physical examinations, her surgical history, daily activities and her subjective complaints along with her mental status examinations. (TR 25-26). Only in the context of this comprehensive review did ALJ Zuber make a purely historic reference to the refusal of Young to agree to the implant of a spinal cord stimulator. (TR 26). This reference, however, was only historical. In other words, nowhere does ALJ Zuber rely upon Young's refusal to consider such a spinal cord stimulator as a basis on which to reject her claim for disability insurance benefits. Rather, ALJ Zuber noted, again correctly, that Young did not require "more aggressive treatment modalities, such as surgery." (Id). In other words, her neck spasms, pain, headaches and involuntary movements were not sufficiently debilitating to require surgery.

Surgery was not prescribed for Young by Dr. Cassaro, but only suggested as a possible treatment modality. Accordingly, we do not have a situation where the Commissioner denied a

claim for benefits based on the refusal of a claimant to undergo a corrective surgery which had a reasonable probability of curing a severe impairment.

This circumstance entirely differentiates the present case from those cited above such as *Dooley v. Astrue*, 2011 WL 4384180 at *7-8 (N.D. Ohio Sept. 2011) and *Fraley v. Sec'y of HHS*, 733 F.2d 437, 440 (6th Cir. 1984). *See also*, *Shauf v. Sec'y of HHS*, 770 F.2d 167 (6th Cir. 1985)(table). In other words, Young's case does not involve a failure to follow prescribed treatment contrary to the language of 20 CFR 404.1530(b)(" When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."). Young was not prescribed a spinal cord stimulator as her condition did not require such surgery, so that her election not to have a stimulator implanted would not have violated the cited regulation; and, more importantly, was never relied on by ALJ Zuber as a basis on which to deny her claim for DIB.

Because ALJ Zuber properly applied the federal regulations and social security rulings in Finding of Fact No 5 of the hearing decision, Young has failed to show any error of law or fact with her sole argument that would warrant reversal or remand of the Commissioner's decision. The decision is fully supported at step five of the sequential evaluation process by the testimony of VE Stanbaugh, who when presented with a hypothetical that accurately reflected the limitations of the claimant, identified a significant number of alternative jobs in the national and regional economy that Young remains capable of performing given her age, education, past relevant work and RFC. (Tr. 77-87). *See Ealy v. Comm'r*, 594 F.3d 504, 512-13 (6th Cir. 2010)( "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays the

claimant's individual physical and mental impairments.' ") (citing *Varley v. Sec'y of HHS*, 820 F.3d 777, 779 (6th Cir. 1987)).

For this reason the decision of the Commissioner shall be affirmed by separate order of the Court and the complaint dismissed with prejudice.

Cc: counsel of record